**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:23-cr-151 (CRC)** |
| **v.** | : | |
| | : | |
| **MACSEN RUTLEDGE,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Macsen Rutledge to 30 days of home detention, 36 months of probation, 60 hours community service, and $500 in restitution.

## I.        Introduction

The defendant, Macsen Rutledge, a 42-year-old handyman who lives in Upstate New York, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 presidential election, injured more than one hundred police officers, and resulted in more than $2.9 million in losses.[1]

---

[1] At the time the Statement of Offense was filed, the loss amount reflected a sum of more than $2.8 million dollars for repairs.  As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department (MPD) also suffered losses as a result of January 6, 2021 and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum.

1

Rutledge pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G): Parading, Demonstrating or Picketing in the Capitol Building. As explained herein, a period of home detention is appropriate in this case because Rutledge: (1) approached the Capitol building in the afternoon of January 6 despite observing armed police guarding the building, flashbang grenades exploding, and tear gas choking the air; (2) posed for a "selfie" on the steps of the Capitol amid the chaos; (3) entered the Capitol at approximately 2:52 p.m. through the Upper House Door; and (4) spent approximately one minute inside the Capitol during the riot.

The Court must also consider that Rutledge's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the Capitol Building, and disrupt the proceedings. The facts and circumstances of Rutledge's crime support a sentence of 30 days home detention as both necessary and appropriate in this case.

## II.      Factual and Procedural Background

### The January 6, 2021 Attack on the Capitol

To avoid exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* Statement of Offense.

### Rutledge's Role in the January 6, 2021 Attack on the Capitol

Rutledge traveled from his home near Syracuse, New York to Washington, D.C. on January 6, 2021 to attend the "Stop the Steal" rally.  Rutledge approached the Capitol from the west side, where police were battling with rioters and deploying tear gas and flashbang grenades. Undeterred by either of these observations or the tear gas, Rutledge pressed forward toward the Capitol building, rounding the south end of the building and climbing the stairs to the Upper House Door.

Before entering the Capitol, Rutledge paused to take a smiling "selfie" on the east steps of the Capitol:



*Figure 1*

Rutledge entered the Upper House Door at approximately 2:52 p.m., where he happened upon a confrontation between police and other rioters inside the Capitol:



*Figure 2*

Specifically, a group of officers attempted to move down the hallway but were attacked by a rioter. Other rioters then slid furniture at the officers. Rutledge turned around and exited the Capitol through the Upper House Door at approximately 2:53 p.m.:



*Figure 3*

*The Charges and Plea Agreement*

On October 25, 2022, the United States charged Rutledge by criminal complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On October

27, 2022, he was arrested in the Northern District of New York.  On May 5, 2023, the United States charged Rutledge by a four count Information with violating the same statutes.  On May 22, 2023, pursuant to a plea agreement, Rutledge pleaded guilty to Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating or Picketing in the Capitol Building. By plea agreement, Rutledge agreed to pay $500 in restitution to the Architect of the Capitol.

### III.     Statutory Penalties

Rutledge now faces sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Rutledge faces up to six months of imprisonment, up to five years of probation, and a fine of up to $5,000. Rutledge must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.     Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of a sentence of 30 days of home detention and 36 months of probation.

#### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States*

*v. Judd*, 21-cr-40, 2021 WL 6134590, at \*5 (D.D.C. Dec. 28, 2021). While assessing Rutledge's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Rutledge the absence of violent or destructive acts is not a mitigating factor. Had Rutledge engaged in such conduct, he would have faced additional criminal charges.

Rutledge would have passed the chaos of the west front on his way around the Capitol to the Upper House Door. When he entered, it was clear that police were ushering people out of the building through the Upper House Door. It was this evacuation that caused the confrontation upon which Rutledge happened when he entered. Commendably, soon after illegally entering the Capitol, Rutledge turned around and exited, spending only approximately one minute inside. Accordingly, the nature and the circumstances of this offense reflect a need for a period of home detention.

### B. Rutledge's History and Characteristics

As set forth in the PSR, Rutledge had a positive upbringing and a steady work history. ECF No. 35, ¶¶ 30-41 and 58-61. Rutledge has a prior conviction in New York from 2020 for driving while ability impaired. *Id.* at ¶ 25. He works for his brother's painting business and is reportedly a talented painter. *Id.* at ¶ 36.

Considering his lack of criminal history and limited time inside the Capitol, the government requests a 30-day period of home detention and 36 months' probation.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United*

6

*States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

#### 1.   General Deterrence

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

#### 2.   Specific Deterrence

The government acknowledges that Rutledge accepted responsibility for his actions. But the factors that led him down the path to participation in the January 6 riot still exist. Rutledge has acknowledged he became "carried away with the crowds and the energy" at Trump rallies and

allowed the influence of those events to lead him to the Capitol on January 6. *See* ECF No. 35, ¶ 22. Through he has purportedly abandoned social media, the vehicle that drove his participation on January 6, the drumbeat of a stolen 2020 presidential election has not subsided.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[2] This Court must sentence Rutledge based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Rutledge has pleaded guilty to Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating or Picketing in the Capitol Building. This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A.  § 3553(a)(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted. *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

Although the defendants discussed below participated in the Capitol breach on January 6, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the specific blend of aggravating and mitigating circumstances and defendant characteristics present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Julia Sizer*, Case No.21-cr-621 (CRC), this Court imposed a sentence 12 months' probation and a $2,000 fine. Like Rutledge, Sizer only spent approximately two minutes inside the Capitol and had no inflammatory social media posts. Sizer had no prior criminal history, while Rutledge has only a limited criminal history.

In *United States v. Samuel Fontanez Rodriguez*, No. 22-cr-256 (EGS), Rodriguez, like Rutledge, spent one minute inside the Capitol, though Rodriguez entered through a broken window. Like Rodriguez, Rutledge entered the Capitol once. Like Rutledge, Rodriguez pleaded guilty to violating Section 5104(e)(2)(G). Judge Sullivan sentenced Rodriguez to 12 months' probation.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is

"firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.     Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Macsen Rutledge to 30 days of home detention, 36 months of probation. 60 hours of community service and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By:     */s/ Douglas G. Collyer*
DOUGLAS G. COLLYER
NDNY Bar No. 519096
Assistant United States Attorney
U.S. Attorney's Office
14 Durkee Street, Suite 340
Plattsburgh, New York 12901
Office: 518-314-7800
Douglas.Collyer@usdoj.gov